Good morning to both counsel. Are both sides ready to proceed? Yes, your honor. Yes, your honor. All right. If you could call the case, please. 32020296, in re marriage of the Steve Phalen, appellant, and Holly L. Phalen, appellee. All right, and we do apologize to counsel. We had a hearing before yours that went late, and that was the reason for the delayed start. And with that, Mr. Angel, when you're ready, you may proceed. Thank you, Justice Brennan, Justice Davenport, Justice Albright. Ms. Gersten, may it please the court. I am the attorney for Steve Phalen, the appellant in this matter. This involves a dissolution of marriage out of LaSalle County, roughly a nine year marriage. And Mr. Phalen had been married before, so he had an idea how marital property worked. And what happened is he set up a escrow account through his bank where his attorneys were also located. It's one big building in LaSalle, Illinois. And he would keep when he went to buy something that was that he was going to treat as non-marital property. In the event, the party's marriage did not last. He went down there, got the check, bought whatever he bought and titled it in his own name. And that was an account which at trial, I wasn't trial counsel. Neither was Ms. Gersten, but it was a account which was also an account where he received his Phalen steel inheritance and which was his non-marital funds. And that was basically conceded at trial to be non-marital property. So that's basically our starting point is where this is. The issues in this case are basically one, whether a certain property should have been classified as non-marital property. Or if not, whether his non-marital state should have been reimbursed for that, for any payments he made. And then the other issue is regarding a male German shepherd dog and how that dog was treated. But with respect to the non-marital property and the reimbursement issues, that concerns some other issues, such as a boat and other property. But mainly what the dispute was is over a fifth wheel, a fifth wheel recreational vehicle and a Jayco camper. And the fifth wheel was one where the facts really weren't in dispute. The parties were in Ohio and they hadn't really planned on buying anything. They find something they find something they happen to like. And the financing was so good that the initial one thousand dollars was paid out of a marital account. But then the remaining payments, then there was a payment stream for a bit. So so they could save on interest. And then there was a big payment. The large payment was paid out of by Holly Phelan's testimony. I think it's page record 67, 68, 83, 84 was paid out of Steve's non-marital account. And then the monthly payments, there was a stipulation that C-186, which said that it came from an account solely in Steve's name. So when the parties did their position papers, the argument was over over that. And at the time of the position papers, both parties agree that the fifth wheel should be awarded to Steve. And that there is some question as to whether the marital estate would be reimbursed a thousand dollars. And to the surprise of everyone, the trial court awarded that to Holly Phelan. A motion to reconsider was filed. Actually, I should back up a bit. A position paper, Holly's trial counsel said it's at least in part marital property, but give it to Steve. Then when it came to motion to reconsider, Steve said it's argued it should be his marital property. I mean, it should be his non-marital property, but reimburse. Didn't Steve say give it to Holly on his motion to reconsider? Oh, are you talking about the fifth wheel? Yeah. Okay. No, I don't believe that was on the fifth wheel. On the fifth wheel, he argued that it was his non-marital property, but that Holly should be reimbursed $1,000 for the marital contribution. The correct law on that was actually going to be was the first question is, does the marriage get reimbursed or was it adequately compensated? And then the reimbursement would be to the marital estate. But for a thousand for the thousand dollars, Steve's trial counsel said, just give that to her. We're not going to argue about that. Justice Albrecht, I think what you may be alluding to is the Geico camper, where that was the source of confusion. That was an item of property that Steve had bought a year and a half into the dissolution of marriage proceedings. And it was probably property that Holly Phelan had never seen, used, anything like that. And all that purchase price that was Exhibit 2 was by that check for Steve's uncontradicted testimony. Where the confusion is that I think you're alluding to, Justice Albrecht, is Steve's trial counsel. There was a very old, I want to say it was 2004 Chevy Tahoe that Holly Phelan's daughter Megan had driven. It wasn't worth much, maybe four grand. And Steve Phelan argued that that was his non-marital property, but that it should be given to Holly's daughter because she used it. And basically, Steve's trial counsel was taking the position that he should, I guess, be given credit in the distribution. What happened then is that the motion to reconsider, Steve's position was argued correctly in the motion to reconsider that the Geico camper was his non-marital property. But then at the hearing, at the last moment, his trial counsel got confused and said, basically, the Geico camper is marital property. And the trial court should have asked him, okay, Mr. Lannon, are you confusing the Chevy Tahoe with the Geico camper? And that's where the concession I think you're speaking of happened. So the first issue is basically, with respect to both the fifth wheel and the Geico camper, is whether this is non-marital property. And with the fifth wheel, yeah, admittedly, the first $1,000 was from the marriage, but the title was always solely in Steve's name. There's definitely no intention of showing that he intended to make a gift, which I believe the burden of that would have been on Ms. Phelan. Well, no, the court said the presumption is that it's marital property, and Steve is the one who didn't produce sufficient evidence for the court to conclude that it was non-marital property. That's what the court's ruling was. Right. Yeah, the court did say that there is a presumption of marital property, and that was the basis for the ruling. But the facts, I believe, in this case were undisputed. I mean, I realize all facts are probably resolved, disputes are resolved against Mr. Phelan. But this is a situation where it's just – I mean, the court didn't say, I think it's not marital property just because of the first $1,000. The court just simply said, not proven, but with the facts being what they were, that I think Mr. Phelan proved it was his non-marital property, unless we're going to make some really arbitrary distinctions. Like, for example, let's say the first payment had been non-marital funds, and let's say he makes one payment, like a sixth payment from a marital account just because, hey, I have to make this, maybe I forgot it, and this is the checkbook I have on me. That would be a situation where it would, I think, clearly state non-marital property. And then – so I suppose we're going to draw a distinction between the first and sixth payment. That doesn't make much sense under the law. Also, plus with the General Assembly, I think it was the 2016 amendments, saying a situation where you could actually take title in their name, make the entire payment out of marital property, but the – like, say it's real estate, but it's secured by, let's say, a piece of non-marital real estate. Then it states non-marital property. So this is a situation where I think the courts need to respectfully just say, okay, what's happening here? He's clearly not intending this to be a gift. He basically paid almost all the consideration from his non-marital account. The extent there's an issue, it should be – the marriage should be reimbursed, which dovetails with the second issue is even if the court decides this is not marital property, then the question becomes reimbursement. And then under the statute, Section 503, reimbursement shall be required unless you either can't trace the contribution or it was intended to be a gift. What about the fact that it's a depreciating asset? Yeah, you're talking in terms of reimbursement? Right. Yes. Yeah. And then I guess that makes it a little bit tricky on the calculation, but I suppose there's two ways you could do this. The first would be, of course, is just whatever – on the reimbursement, whatever Mr. Phelan paid, he would receive back or credit to his non-marital estate. Or the other option would be is, okay, it's a depreciating asset. Mr. Phelan could just actually get the item and the marriage is reimbursed for whatever contribution it is that way. That way, the second way may actually be cleaner because then you don't have to figure out, okay, when he bought it, it was worth $100,000, but now it's worth $70,000. So there's definitely different ways to reimbursement. Just the fact that case depreciating going downwards shouldn't eliminate his right of reimbursement just on the theory that it's maybe a little bit difficult to calculate. So, I mean, the trial courts would have certain – definitely some discretion on how to do this, but this was a case where despite the issue of reimbursement being raised, both in Mr. Phelan's motion to reconsider and I think it was raised in Ms. Phelan's initial position paper where she says it's at least partly marital, which I read as reimbursement. The trial court should have addressed the issue of reimbursement, either giving Steve Phelan back what he paid or some amount close to that, or saying since Mr. Phelan paid for 90% of this asset, clearly didn't intend to make a gift, I'm going to reimburse the marriage in like $1,000. But the problem is Steve didn't put on any evidence with regards to that. To reimbursement? Oh, yeah, or even any support for the reimbursement. And he didn't give the court any guidance or help or assistance with regards to that or produce any evidence with regards to the value of the reimbursement. I think he did, because he did put in evidence as to what the payoff amount was. There was a little bit of difference. I think one part he said the payoff was between $74,000 to $79,000. Another part I think he said it was $85,000. There was some confusion, but evidence was presented as to that, Justice Albrecht. And there was evidence that he took basically a title in his own name. He handled this, managed it. It was basically his separate property. There's no intent that he intended to make a gift. So, I mean, the evidence wasn't perfect, because, yeah, there was some variance onto that. But is that yellow light? Okay. Didn't they travel together? It was. Okay. Didn't they travel together in the trailer for about a year after the purchase together? Right, but, yeah, Justice Brennan, yes. I know he made the payments, but they did use it together for at least a year, right? That's true, but a lot more than that's required to make a gift. It's not just I let her ride with me or I even let her take me out with the family. There's got to be an actual affirmative intent to make a gift. And the evidence was such that he didn't intend to make a gift. Same with the Jayco camper. And then also, with respect to the male German shepherd herd, this was a case where the circuit court simply applied the wrong standard. I don't know if the circuit court wasn't aware of the 2018. Counsel, I have a problem. Steve presented no evidence whatsoever about the best interest of the dog. Nothing. He gave nothing. All he said was, this is my dog. I want it. That's all he said. Your Honor, I think he presented a little bit more than that. He presented I registered the dog with a shelter. I'm responsible for it. I did the paperwork. I'm based. I mean, and then someone may have came through Holly Phelan as well. But she said that basically he's he's doing this because he's home. So he has a lot more free time since he's his own boss to take care of the dog than than she does. So, yeah. And the evidence that was presented. I mean, yeah, I could go to a somewhat of a division, but I think it's just as equally applicable to the proper standard. Justice Albrecht or Justice Davenport, any follow up questions? No, I don't have any. All right. Mr. Angel, you'll have an opportunity in rebuttal. Ms. Skirston. Thank you, Your Honors, and good morning. May it please the court. I am Jennifer Skirston on behalf of the appellee, Holly Phelan. I'd like to start by quoting a sentence in the trial courts judgment for dissolution of marriage. The trial court said, quote, the court has done its very best in attempting to identify and classify marital and non marital assets. And in fashioning an equitable division of property, given the little evidence the court received as to classification and valuation. That's from the trial court. And I believe from the statements of the justices here today, that's likely the opinion as well of the appellate court. The trial court only had available to consider the evidence that was presented to it. The court felt the need to say that little evidence was presented and that it did its best. Counsel, when the court doesn't have enough evidence to make a proper decision and makes a proper decision anyway, there are cases, appellate court opinions that are legion that send it back to the trial court for them to reconsider and require more evidence from the court. Can you explain to us why we shouldn't do that here? Because of the presumption of marital property. All property that has been accumulated during the marriage is presumed marital pursuant to Section 503 of the Illinois Marriage and Dissolution of Marriage Act. And there is adequate evidence that the property was accumulated during the marriage. But any sort of arguments by Steve Phelan that the property was non marital, that was his burden of proof. And so the presumption would apply here. He claims that this trial court should be reversed because the court abused its discretion or made a finding that was against the manifest way to the evidence. And that's simply not true. He failed to meet his burden of establishing by clear and convincing evidence through tracing or otherwise that property that was obtained during the marriage was non marital. And I wanted to address the fifth wheel trailer as well. The standard of review before this court is manifest way to the evidence. That means that the trial court will only be reversed if an opposite conclusion is clearly apparent and the trial court's findings were unreasonable, arbitrary, and not based on the evidence. Here, due to the presumption of marital property, the court found that the fifth wheel trailer was marital property subject to equitable distribution. Now, the facts at hand before the trial courts were set forth during the hearing before the trial court and also based on a stipulation that was agreed to by the parties. It's clear from those findings, or rather the evidence presented to the courts, that there was a thousand dollar down payment on that fifth wheel, and that was made out of a joint marital checking account. There's also an agreement that there were approximately 12 months of payments that occurred after that. However, no evidence was presented by Mr. Phelan as to whether that checking account was marital or non marital. Rather, the only evidence presented by him was that it was a checking account solely in his name, and that does not mean under the law that it was non marital. No evidence was brought to the court's attention where he received any sort of income, what checking account that went into. There were no details that would allow that court to determine whether this checking account in his name only was marital or non marital. The other evidence that was provided suggests that the remainder was paid off. I would disagree with Mr. Angel's assertion that Holly agreed that the balance was paid off by the trust account. But rather, I believe that the record at page 68 says, quote, he chose to pay it off in full, end quote. Holly Phelan did not provide any testimony as to where those funds came from. The only other evidence was an array of checks made payable to Mr. Phelan from the Herbal Scheimer Trust account. There were no checks presented to any third parties that would have purchased property. Only these checks were made to him. Mr. Phelan did not meet his burden of showing tracing by clear and convincing evidence. He showed some tracing, but he didn't go so far as to be full tracing by clear and convincing evidence. He missed some steps. He showed from the trust account, which the parties agreed to be non marital, directly to him. He didn't show where the money went after that. He did testify that there was a cashier's check, but he didn't provide proof of a cashier's check. And in fact, all of the checks that were made payable to Mr. Phelan were in very even numbers, ending 000.00. It couldn't be that that specific amount would have been paid directly to him based on that amount. There would even have to be some difference in amounts, and he didn't rectify that either. I would also note that the reply discusses some accounts that were listed in a pretrial stipulation. That pretrial stipulation was submitted to the court by Attorney Lannan. It was not agreed to by Holly Phelan's trial counsel, and so it was not actually a stipulation. Rather, it was a suggestion by one side. I would suggest that best evidence was not provided, and this best evidence was in the possession of Mr. Phelan. And it was his obligation to provide that best evidence. I would further provide that the evidence must be provided during the trial court, and any sort of allegations by trial counsel during position papers or the like would not be relevant for providing the court with actual evidence. The court was limited to the evidence and the testimony of the parties during the trial. I would also suggest that there is some forfeiture with regard to the Fifth Wheeler, in that the attorney in the issue of post-trial statements and motions to reconsider talked about the equitable distribution of the Fifth Wheeler. Non-marital party by statute cannot be equitably divided. It goes to who owns it. And so, therefore, I would state that the trial court could not reconsider the issue of whether property was marital or non-marital because of that equitable argument. The second issue is whether the court was correct in not reimbursing Steve's non-marital estate. And I think these arguments go along the same lines. There was no evidence showing that the non-marital estate paid for the Fifth Wheeler. It was not traceable by clear and convincing evidence. Additionally, there was evidence of a gift. During Steve's testimony, he testified using the word we over and over again when it came across to the circumstances of purchasing it. They used the camper together, and they used it on campground close to Holly Phelan's family. There's some testimony concerning, I believe, her aunts being very close by. This was used for the marriage, and this was used as a marital asset. There's also a case law that I cited in my brief concerning a sailboat. And the court in that case found that the subject matter of the item at issue presupposed that the asset was marital. And there was no evidence provided that it was not a gift. I don't believe that the word gift came up in Steve Phelan's testimony whatsoever. The most close allegation that Steve Phelan made was that he got divorced before, and he knew what to do to protect his assets. I would argue to the court that he was, that's not what he did. And that may be what he wanted to do after he was getting divorced to a second wife, but that's not what he did. There's a third issue. And that issue is whether the court was correct in classifying the 2019 Jayco camper. And the same facts apply to this. He did not meet, by clear and convincing evidence, his burden of proving that it's a non-marital asset, in contrary to the presumption that it's marital. Regardless of whether it was obtained while the parties were going through a divorce, it was still obtained while the parties were married. Mr. Phelan attempted to offer another similar check in the amount of $28,000 from his trust account paid directly to him concerning this asset. And that simply does not show a transfer from the trust to the third party that would have been selling the Jayco camper. There is a disconnect there. He does not connect the dots, and that was his burden to do. There is also arguments before the appellate court concerning, even assuming that the property is marital, was the court correct in awarding it to Holly Phelan? And those two issues are the fifth wheel trailer and the Jayco camper. There's nothing to suggest in the court record that the provision of those assets to Holly Phelan was inequitable. In fact, there's a laundry list marital property that Steve was receiving, including various vehicles, some ATVs, and two boats, and real estate. So clearly the court, in considering the factors, and it did indicate that it did consider all the relevant factors, it didn't leave one spouse high and dry and the other spouse receiving nothing. There was equitable division of property, and that relates to both the Jayco camper and also the fifth wheel. There were two other issues concerning classification of the crestline or boat and the street or home that was mentioned in the appeal. And I would say that Steve Phelan failed to rebut any sort of presumption that that's marital property. Again, I think that the record is clear that those assets existed, that they were accumulated during the marriage. But Mr. Phelan did not show by clear and convincing evidence any sort of tracing from a non-marital asset to those properties in the purchase. And then finally, I wanted to address the issue of the dogs. The court indicated in its judgment that the court has considered all relevant statutory factors in dividing marital property. Now, I do understand that section 503 subparagraph N indicates that the court must take into consideration the well-being of the companion animal. In my response, I did address that issue. I think that if we look hard, we will find evidence that Perk, the dog at issue, was a litter mate with a dog that was awarded to Holly that was not subject to this appeal. And I think that that would show that if the court considered that, which I believe it did, it would be a best interest. But I believe that it is inequitable and not something that would be appropriate for Mr. Phelan to fail to raise any idea or issue that he would have concerning the well-being of the companion animal. He should have done that during trial. He shouldn't bring everyone to the appellate court, use the time and expenses of the parties in this honorable court to raise an issue that he could have raised at the trial court level. And there's nothing contrary that was provided to the trial court that the award to Holly was not in the best interest of that animal or towards the well-being of that companion animal. So as I began my presentation, and as the trial court indicated in its judgment, it did the very best it could, given the little of evidence received. Even assuming that Steve Phelan did not waive or forfeit arguments to the issues at hand, he still had the initial burden of proving by clear and convincing evidence that the property accumulated during the marriage is non-marital. He did not meet his burden. He did not connect the dots. He did not prove tracing of non-marital funds by clear and convincing evidence. He did not provide evidence of fair market value of assets at the time of hearing, and he did not provide evidence of the best interest of the dog herd. In light of that, the trial court did its best in fashioning an equitable judgment. On behalf of the appellee, Holly Phelan, I ask that this court affirm the decision of the trial court in its entirety. And unless the court has any further questions, this concludes my response. Justice Albrecht, any questions? No. Justice Davenport? No. All right. Thank you, Ms. Skirsten. Mr. Angel, rebuttal. You're muted, Mr. Angel. Thank you. Yes. Thank you, Your Honor. To follow up on a question Justice Albrecht asked about if there's not sufficient factual findings, why don't we send this back? And the reason behind that, of course, is that it's not enough for the trial court just to say presumption not met. We want some proof that the trial court considered everything, for example, that they considered the statutory factors rather than just dividing the pension 50-50. So this is a case where basically the trial court just simply didn't go through anything and said insufficient without even looking what's at issue. But as far as the payments that Ms. Skirsten raises regarding the fifth will, I mean, it was stipulated, came from an account solely in Steve Phelan's name. I mean, she's not going – Holly Phelan's not going to be stipulating from this unless she knows where it comes from. And then also with respect to the payments, she said the payments were from the Phelan Steel Settlement, which everybody agrees that it was his non-merit property. Without this, she's probably not conceding this issue in her position paper. So I would respectfully suggest she had a lot better idea where the payments for the fifth will came rather than just saying it was too big and I couldn't figure anything out. Also – Mr. Angel, Mr. Angel, was the payoff amount check placed into evidence for the exact amount of the payoff, the check itself? Yes, I believe there was a check for $85,000 that was placed into evidence. I want to say it was either E5 or E – My point is, was it an exact dollar amount to match anything from a deposit that he had received, payments that he received from the escrow? And wasn't the check from the escrow to Steve? It wasn't to the lender? Right, it wasn't to the lender, but that was basically the case, I think, with all the checks. Steve testified as to the procedure where he was going to buy something that was non-merit property. He'd go get a check from John Duncan at the Herbal Shimer Law Firm, take it downstairs to the bank, and the bank would do the checks, and then Steve would give them to who he was buying it from. And Steve's testimony was uncontradicted on that point. And like, for example, with the big payoffs, Holly Phelan at trial was the least able to know enough to say that, hey, he paid it from that Phelan Steel settlement. So, while the record-keeping could have been better than it was, there was adequate evidence that all of the $1,000 was paid from his non-merit account. And in terms of the dogs, there was plenty of evidence. Also, one thing I didn't mention initially was the dogs. Herc, the dog, lived with Steve Phelan for a vast bulk of his time, and so changing where the dog lives and who he lives with would definitely go to the best interest of the dog. So, there was plenty of evidence on that. And with regard to the Jayco Camper, I mean, that was the check that was written – I think that was Exhibit 2. It was written in July – I think July 30th, 2020. There's definitely no evidence of making a gift or anything like that, nor does – and that was also an item that Steve Phelan never, to the best of my knowledge or in the record, ever used with Holly on any occasion or anything like that. And also with the fifth wheel, the fact that he says, we, doesn't mean much because, I mean, it's a married couple. They're probably going to use non-merit property together. I mean, they lived in his non-merital house for the entire marriage. So, just the fact that you may think, hey, I'm going to share this with my spouse doesn't mean that I'm giving my spouse an interest in the event our marriage dissolves. So, for those reasons, we respectfully request that this court reverse the circuit court's determination that both the fifth wheel camper, the Jayco Camper, and the other property that we listed were non-merit property or, at least in the alternate event, alternatively award a reimbursement to the non-merit state. And we request that the – with respect to the division of the dogs, this court send this matter back for a determination under the proper legal standard. Justice Albrecht, any questions? Additional questions? No additional questions. Justice Davenport? No, thank you. All right. The court thanks both counsel for their spirited arguments. The matter will be taken under advisement, and a decision will issue in due course.